### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION
### CASE NUMBER: 24-CR-00189

**UNITED STATES OF AMERICA,**
        **Plaintiff,**
**vs.**

**MEIR ROSENBURG,**
        **Defendant.**
_____/

### SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE

**COMES NOW** the Defendant, **MEIR ROSENBURG**, by and through the counsel and respectfully submits this Memorandum in support of his request for a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth" in 18 U.S.C. §3553(a).

### Mr. Meir Rosenberg

Mr. Rosenburg is 33-year-old individual who without a shadow of a doubt, made a grave mistake. Mr. Rosenburg is eager to show this Court, society, and his family, that he is prepared to learn from his errors, seek help for his past unaddressed issues, traumas, to be a better member of humanity. Despite this optimism, Mr. Rosenburg is aware that because of his actions the world will view him differently, he will be met with limited career opportunities, personal relationships, housing options, and just daily challenges to his life.

### TIMELINE

Mr. Rosenburg's only contact with the law, is the one that has brought him before this Honorable Court. To say Mr. Rosenburg is ashamed is an understatement. While we all have a past, and unresolved issues, Mr. Rosenburg has endured more than most for someone his age. In Mr. Rosenburg's words, his childhood was "interesting." Mr. Rosenburg has had and continues to have

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 2 of 25

a very strained relationship with his biological father.  Always feeling disconnected to him, and

never really felt he had that father figure in his life.  Mr. Rosenburg parents divorced, and Mr.

Rosenburg has and continues to remain very close to his mother and three (3) sisters.



Mr. Rosenburg moved a lot but landed in Isarel as a teenager.  There Mr. Rosenburg was

faced with military service but mentally, even as a young adult, ███████████████████████

████████████████████.  Having never dealt with his trauma, the thought of military service

further exacerbated his mental health, which ultimately disqualified him from military service.  It

was in those years that Mr. Rosenburg sought to "self-medicate/treat" his demons – anxiety and

other undiagnosed mental health issues.  Mr. Rosenburg became addicted to marijuana, using it on

and off, but mostly using marijuana *daily (multiple times per day)* for almost a decade.  Continuing

to bury his head in the sand and not face his trauma and abuse.

Mr. Rosenburg tried various organizations and self-help remedies to face his past, but

unfortunately nothing worked.  Mr. Rosenburg kept his emotions bottled up and never addressed

the root of the problem.  Mr. Rosenburg and led an abused life – ██████, physical, and emotional

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 3 of 25

abuse – ███████████████████████████████████████████.

While he absolutely has the support system of his friends and family throughout this ordeal, Mr. Rosenburg acknowledges he needs help. Mr. Rosenburg is prepared to accept the help to address his needs and substance abuse problem. Mr. Rosenburg is before this Court to receive his punishment ██████████████████████████████████████.

## POLICY OBJECTIONS TO THE PSR

Mr. Rosenburg has a Criminal History Category of I. Mr. Rosenburg's guideline calculations result in a Total Offense Level of 33 which results in a sentencing range of 135-168 months. Defense has lodged various policy objections to the PSR pursuant to the plea agreement and circumstances of the present case, proposing a Total Offense Level of 23 which results in a sentencing range of 46-57 months. *See* PSR Objections, filed via email to USPO.

The majority of the enhancements themselves are subjectively unreasonable in the case at bar since the majority of all guideline amendments and congressionally mandated changes to the guidelines were not the product of an empirically demonstrated need for longer sentences. In almost every instance the amendments and congressionally mandated changes were aimed at the producers and traffickers of child pornography for profit, those largely considered the most dangerous offenders. The most dramatic and most recent changes to the Guidelines, namely the Protect Act of 2003 and its subsequent amendments, resulted not from study by the Commission, nor debate in Congress, but instead by the actions of two unknown authors within the Department of Justice. See

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 4 of 25

Deconstructing the Myth of Careful Study: A Primer on the Flawed Progressions of the Child Pornography Guidelines, (Stabenow 2008).[1]

Additionally, there are various federal judges, Sentencing Commission members, and former senators arguing that the guidelines for Child Pornography cases are "too harsh." *See* A Quiet but Growing Judicial Rebellion Against Harsh Sentences For Child Pornography Offenses – Should the Laws be Changes? (Arlen Spector and Lind Hoffa, The Champion, NACDL, October 2011). [2]

The Sentencing Commission undertook a review of possession and receipt of child pornography provisions. In regard to that undertaking, Chief United States District Judge M. Casey Rodgers (N.D. Fla.), speaking on behalf the Criminal Law Committee of the Judicial Conference of the United States, urged the Commission to make several specific changes to the child pornography guidelines. While recognizing the seriousness of offenses in this category, Judge Rodgers stated:

> There is a common sentiment among many trial judges that these sentencing guidelines fail to provide an appropriate baseline or starting point for child pornography offenses which, combined with numerous offense characteristics, restrictions on departures, and congressionally mandated provisions not fully supported by the Commission's empirical study, produce guideline ranges that are too high compared to the statutory range, *particularly in the area of receipt and possession*.

---

[1] Mr. Stabenow is an Assistant Federal Public Defender in the Western District of Missouri. His article tracks the extensive legislative history and Congressional changes to the child pornography guidelines. It is both informative and shocking. A copy of the complete article is attached with this filing.

[2] Mr. Spector was a Senator for 30 years.  Ms. Hoffa served as Criminal Division Chief at the US Attorney's Office from 2005-2009.  The article addressed the need for change in Child Pornography Guidelines, as well as the reasons why Congress fails to make changes.  The article explicitly notes that change is necessary, "apart from judicial rebellion." A copy of the complete article is attached with this filing.

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 5 of 25

Addressing the Commission, Judge Rodgers emphasized that the history of direct congressional involvement in amending § 2G2.2 has caused the provision to yield recommendations that are disproportionate to other federal sentences. This means that the guideline does not further the goals of sentencing reform the way guidelines drafted by the Commission are presumed to do:

> The history outlined in the previous section reveals that the statutory directives increasing the base offense levels and adding large level enhancements have been imposed without supporting empirical data correlating them to the harm caused by a possession or receipt offender or justifying the amount of levels added for a particular offense, thereby creating a concern over disproportionality. Also, because the congressional directives and amendments bypassed the Commission's traditional role of engaging in empirical study, judges are concerned that the incremental increases accompanying the specific offense characteristics are not reliable and thus are incapable of yielding results consistent with the original goals of sentencing reform as well as the Section 3553(a) factors in the ordinary case.

Statement of Chief United States District Judge M. Casey Rodgers (N.D. Fla.) before the United States Sentencing Commission at 9 (Feb. 15, 2012).[3]

> Because every specific offense characteristic applies to the typical receipt and possession offender, the guideline calculation approaches or exceeds the statutory maximum sentence before even consulting the horizontal criminal history axis of the guideline grid. In this respect, the "calculation" itself is an exercise in fiction because the criminal history axis of the calculation has little, if any, impact on the guidelines sentencing range.

Id. at 12.

In a decisive rejection of mindless uniformity, the Supreme Court has recognized that unwarranted uniformity is every bit as objectionable as unwarranted disparity, and that when a guideline is not the product of "empirical data and national experience," it is not an abuse of discretion to conclude that it "yields a sentence greater than necessary to achieve §3553(a)'s

---

[3] Statement of Chief United States District Judge M. Casey Rodgers (N.D. Fla.) before the United States Sentencing Commission at 10 (Feb. 15, 2012).

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 6 of 25

purposes, even in a mine-run case." <u>Gall v. United States</u>, 552 U.S. 38 (2007). The Supreme Court

in <u>Kimbrough</u> and <u>Gall</u> affirmatively recognized that Congress makes mistakes, and that when the

Commission follows or exacerbates a congressional mistake with guidelines that are not based on

empirical data or evidence, and that are contrary to sentencing purposes or create unwarranted

disparities or similarities, the courts are free to reject such guidelines. <u>Kimbrough v. United States</u>,

128 S. Ct. 558 (2007); <u>Gall</u>, 128 S. Ct. at 594 & n.2.

 The United States Sentencing Commission has reviewed the current guidelines and believes

that a new guideline provision dealing with offenders' community involvement, as distinct from

their distribution conduct, could better differentiate culpability. The Commission proposes the

following three categories of offender behavior encompassing the primary factors that should be

considered in imposing sentences in §2G2.2 cases:

1. The content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology);

2. The degree of an offender's engagement with other offenders — in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and

3. Whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

Report to Congress: Federal Child Pornography Offenses" (December 2012 – Filed February 2013.[4]

---

[4] This comprehensive report examines federal sentencing policy in child pornography cases. It focuses primarily on non-production offenses under USSG §2G2.2. One chapter also analyzes production of child pornography offenses under USSG §2G2.1. This report is the result of a multi-year study by the Commission and complements and expands upon the Commission's 2009 report, *The History of the Child Pornography Guidelines*. United States Sentencing Commission, Report to Congress: Federal Child Pornography Offenses, available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm.

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 7 of 25

Mr. Rosenburg did not seek out children, and while not an excuse, his actions were limited in time and scope to conversations with two (2) individuals. Mr. Rosenburg was detained with various electronic media, yet the number of images in question is minimal and nothing exceptional when compared to other similarly situated defendants who have vast collections of CSAM that warrants any consideration in terms of an increase in sentence per the Commissions above proposed §2G2.2(1) factors. Mr. Rosenburg has no history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.[5] Mr. Rosenburg is someone who made a mistake and will pay for it for the rest of his life. In comparison to most individuals charged with this type of offense, there is no vast collection. The files were limited to various numerous thumb nails.[6] It is important to note that there were little to no actual images saved to Mr. Rosenburg 's devices. All images were "cached" files.[7] There is no search history, or other metadata[8] devices showing that he ever sought out CSAM.

---

[5] The Government and probation will contend that his sexual activities in Columbia, where Mr. Rosenburg admitted to sexual acts with individuals who were 16 and 17, is indicative of such actions, but in Columbia the age of consent is 14, and as such those actions are legal and should not be given any weight in the instant matter.

[6] A thumbnail, sometimes referred to as a thumb, is a reduced in size image that acts as a preview of a video or image. For images, it's a small, compressed version of the image. However, for video, it could be a frame from the video, or it could be a custom image that has to do with the video content in some way. Thumbnails are intended to make it easier for users to visually locate video clips or images they need for their work or viewing purposes. *See* https://api.video/what-is/thumbnail/.

[7] A file of data on a local hard drive. When downloaded data are temporarily stored on the user's local disk or on a local network disk, it speeds up retrieval the next time the user wants that same data (Web page, graphic, etc.) from the Internet or other remote source. *See* https://www.pcmag.com/encyclopedia/term/cache-file.

[8] Metadata means "data about data." Metadata is defined as the data providing information about one or more aspects of the data; it is used to summarize basic information about data that can make tracking and working with specific data easier. Some examples include: Means of creation of the data. *See* https://en.wikipedia.org/wiki/Metadata#:~:text=cell%20phone%20locations.-,Definition,of%20creation%20of%20the%20data.

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 8 of 25



United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 9 of 25



United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 10 of 25

███████████████████████████████████████████

███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

## SUPPORT NETWORK

Attached to this filing are letters from family and friends of Mr. Rosenburg.  *See* Exhibit B.

His friends and family describe Mr. Rosenburg as a sweet, respectful individual.  Someone who is

"genuine" and whose "generosity is unparalleled." Id.  Someone who is compassionate and will

always help others.  A source of "kindness and support."  Id.  Someone who will always be there

for you no matter what, even if it was to his detriment.  People who know him, lean on him. Mr.

Rosenburg is seen by many as their "constant source of strength, joy and support."  Id.

It is unquestionable that Mr. Rosenburg is remorseful and ashamed.  Mr. Rosenburg

cooperated with law enforcement, never being a hinderance, and promptly accepting responsibility.

Understanding that, Mr. Rosenburg is before this Court, his faith, and his family, asking for

forgiveness.  Mr. Rosenburg is determined to show the world that this moment will not define him.

Mr. Rosenburg will not that that scared little 8-year-old boy, be trapped inside him anymore, and

is committed to being a better person, son, and role model for all those other scared 8-year-olds.

Mr. Rosenburg has learned from his past, and that being a victim is not a solution, but something

that one must embrace, conquer and accept.  Remorse is often discussed as an important factor in

assessing future risk of a defendant, which correlates to a ███████████████████████████

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 11 of 25

████    Mr. Rosenburg's genuine remorse to the court reflect his acknowledgment of guilt and acceptance of punishment.

## DEFENDANT IS UNUSUALLY SUSCEPTIBLE TO ABUSE IN PRISON.

"A defendant's unusual susceptibility to abuse by other inmates while in prison may warrant a downward departure." United States v. Koon, 518 U.S. 81 (1996), *see also See* United States v. Parish, 308 F.3d 1025, 1032 (9th Cir. 2002). Given the nature of the charges that Mr. Rosenburg is being sentenced for, he is more likely than other defendants to be sought out for further physical and sexual abuse. "An estimated 60,500 inmates…report experiencing sexual violence ranging from unwanted touching to nonconsensual sex, according to a recent Bureau of Justice Statistics survey of Federal and State inmates." Pat Kaufman, Prison Rape: Research Explores Prevalence, Prevention, National Institute of Justice, June 1, 2010. The likelihood of a defendant who is sentenced on a sexual offense being targeted for abuse is great.

Inmates sentenced on sexual offenses are considered easy prey. This Court is well within its discretion to depart due to a defendant's susceptibility to abuse in prison. "People are sentenced to prison *as* punishment, not *for* punishment…"[9] Mr. Rosenburg has accepted his guilt and the consequences but should not be subject to further abuses. A lengthy sentence as contemplated in the Guidelines, is continued unimaginable physical torture, sexual abuse, and a violation of the 8th amendment.

## SEX OFFENDER REGISTRATION PROVIDES PROTECTION TO THE PUBLIC

Punishment can take many different forms. The most used punishment (incarceration) is aimed at deterring those who produce child pornography. Not a something Mr. Rosenburg is

---

[9] Kathleen Dennehy, Massachusetts Corrections Commissioner

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 12 of 25

accused of.  Thus, in consideration of the facts and circumstances of Mr. Rosenburg 's case, what

is a fair and just punishment that will provide the necessary punishment, promote respect for the

law, and protect the public from further crimes of the defendant?    Mr. Rosenburg will become a

convicted felon at the age of 33. Yet, the implications of incarceration go much farther.  Mr.

Rosenburg will endure penalties and punishment far beyond any term of incarceration, forced to

register for life.  Mr. Rosenburg will be required to register as a sex offender.   The title restricts

where Mr. Rosenburg can work, travel, and – most significantly – live. Unlike incarceration, the

"scarlet letter" will follow him for the rest of his life.  For his part in this greater evil that is child

pornography, he will forever be branded a convicted sex offender. The label far exceeds

incarceration and itself addresses the factors laid out in 18 U.S.C. § 3553(a)(2)(C).

**JUST PUNISHMENT / RESPECT FOR THE LAW / DISPARATE SENTENCING**

18 U.S.C. §3553(a) (6) advises the court to avoid unwarranted sentencing disparities among

defendants with similar records who have been found guilty of similar conduct. In its holding in

Booker the United States Supreme Court stated:

> [t]his point is critically important. Congress' basic goal in passing the Sentencing
> Act was to move sentencing in the general direction of uniformity. That uniformity
> does not simply consist of similar sentences for those convicted of violation the same
> statute… [i]t consists, more importantly, of similar relationships between sentences
> and real conduct…

United States v. Booker, 543 U.S. 220 (2005).

The necessity for consistent and not disparate sentencing cannot be overstated. Part of the purpose

behind creating the Sentencing Commission was to ensure that similarly situated defendants receive

comparable sentences.   Under the circumstances, Kimbrough counsels that this Court must

undertake its own analysis of how to best meet the purposes of sentencing while effecting no greater

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 13 of 25

deprivation of liberty than necessary for Mr. Rosenburg 's particular case. Judge Weinstein has

advised that the task requires searching examination of the facts before the Court, rather than

mechanical calculations applicable in every case:

> Varying interactions of unquantifiable forces pushing in a variety of directions determine the appropriate sentence in child pornography cases. The assessment of whether an offender will act out in the future requires a prosecutor's and judge's careful, informed and somewhat experiential judgment—like other sentencing factors—on a case by case basis rather than by a rigid *a priori* scheme applicable to all cases. Ultimately, the judgment is based on rough calculations of nonquantifiable risks and benefits, cruelties and compassions; statute and precedent provide limited guidance in the individual prosecution.

United State vs C.R., 792 F.Supp.2d 343, at 377.

Courts have found that child pornography guidelines mete out excessive punishment, and

thus Courts, sentencing commissions, and even the Department of Justice, agree that the Guidelines

under "existing Specific Offense Characteristics ("SOCs") in USSG § 2G2.2 may not accurately

reflect the seriousness of an offender's conduct, nor fairly account for differing degrees of offender

dangerousness." *See* Letter from Anne Gannon, Nat'l Coordinator for Child Exploitation

Prevention and Interdiction, Office of the Deputy Attorney General, United States Dep't of Justice.

*See* United States v. Mallatt, No. 4: 13CR3005 (D. Neb. Sept. 12, 2017).

In Mallatt, the Court states:

> Long terms of imprisonment for non-acting-out offenders have been strongly attacked as unsound and as fundamentally deviating from the Guidelines' overarching policy and expertise. *See, e.g.,* United States v. Dorvee, 616 F.3d 174, 185-88 (2d Cir. 2010) (recognizing the district courts' post-*Booker* authority to vary from the Guidelines solely on policy disagreement, and encouraging courts to take discretion seriously in fashioning sentences for child pornography defendants, and stating that U.S.S.G. § 2G2.2 is "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results"); United States v. Henderson, 649 F.3d 955, 960 (9th Cir. 2011) (holding that "district judges must enjoy the same liberty to depart from [the child pornography guideline] based on reasonable policy disagreement as they do from

the crack-cocaine Guidelines discussed in <u>Kimbrough</u>); <u>United States v. Grober</u>, 624 F.3d 592, 609 (3d Cir. 2010) (finding district court had provided "a sufficiently compelling explanation for its policy concerns about § 2G2.2 and its justification for imposing a sentence outside the range § 2G2.2 recommended."); <u>United States v. Stone</u>, 575 F.3d 83, 97 (1st Cir. 2009) (expressing view that child pornography guidelines are harsher than necessary).

Sentences imposing no or very little incarceration have been found appropriate for offenders convicted only of possessing child pornography. *See, e.g.,* <u>United States v. Autery</u>, 555 F.3d 864 (9th Cir. 2009) (affirming non-Guidelines sentence of five years of probation and no period of incarceration for possession of child pornography); <u>United States v. Stall</u>, 581 F.3d 276 (6th Cir. 2009) (affirming non-Guidelines sentence of one day of incarceration followed by ten-year period of supervised release); <u>United States v. Prisel</u>, 316 Fed. App'x 377 (6th Cir. 2008) (affirming non-Guidelines sentence of one day in prison followed by eighteen months of home confinement for possession of child pornography); <u>United States v. Rowan</u>, 530 F.3d 379 (5th Cir. 2008) (affirming non-Guidelines sentence of five years of probation and no period of incarceration for possession of child pornography); <u>United States v. Polito</u>, 215 Fed. App'x 354 (5th Cir. 2007) (per curiam) (affirming non-Guidelines sentence of five years of probation with one year of house arrest for possession of child pornography).[6] *See also* <u>United States v. Morace</u>, 594 F.3d 340, 351 n. 10 (4th Cir. 2010) (noting "that some district courts have begun sentencing defendants convicted of possessing child pornography to one day of incarceration followed by a term of supervised release");[7] 2012 Report to Cong. at 7 ("[D]efendants sentenced under the non-production child pornography guidelines have received sentences outside of the applicable guidelines more frequently than defendants in all other major types of federal criminal cases."); *id.* at 130 (all child pornography defendants sentenced to probation in fiscal year 2010 were convicted of possession only).

<u>Mallatt</u>, at 22.

While in the instant mater, Mr. Rosenburg is charged with transportation, the facts and circumstances are akin to defendants charged with simple possession. In handing down the sentence, Judge Bataillon found the following factors that warranted the imposition of the sentence:

1) The unrefuted psychological evaluation.
2) The psychological testing finding the defendant was a low to moderate risk to reoffend.
3) The fact that the defendant has engaged in treatment and will benefit from future treatment.
4) Educated.
5) Employable.

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 15 of 25

6) Defendant's characteristics.

Judge Bataillon stated:

> …the child pornography Guidelines are driven by Congressional directive and are
> not grounded in any scientific, statistical, or empirical method. The advice imparted
> in the Guidelines does not reflect the sort of empirical data, national experience,
> and independent expertise that characterize the Sentencing Commission's
> institutional role. Given the acknowledged flaws in the Guidelines' scheme for
> punishment of Internet child pornography crimes, the court does not accord a high
> degree of deference to the Guidelines. It is difficult to defer to the Commission's
> Guidelines when even the Commission believes they are flawed.
>
> …
>
> The court agrees with the Sentencing Commission that the problem with the
> Guidelines for nonproduction offenses is that the Guidelines do not help the court
> distinguish between run-of-the-mill offenders and the worst offenders. The
> Sentencing Commission has acknowledged that enhancements that were originally
> intended to apply to only those offenders who committed aggravated child
> pornography offenses are now being applied routinely to most offenders….

Id. at 28-29.

Judge Bataillon found:

> …The content of the defendant's child pornography collection is not out of the
> ordinary—the types of sexual conduct depicted in the images and the ages of the
> victims depicted are typical of most child pornography offenders sentenced in this
> court…There is no evidence that the defendant has organized, maintained, and
> protected his collection over time through the use of sophisticated technology, he
> is not a particularly sophisticated offender... Further, the defendant has no history
> of engaging in sexually abusive, exploitative, or predatory conduct in addition to
> his child pornography offense.

Id. at 35.

Judge Bataillon ordered:

> In light of all the § 3553(a) factors, because the defendant has been convicted of a
> nonproduction child pornography offense, has a low potential for recidivism, has
> no significant prior criminal history, and appears genuinely remorseful about his
> crime and aware of the harm that it caused, a sentence of time served followed by
> lengthy and structured supervised release will promote respect for the law and

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 16 of 25

> afford an adequate level of deterrence to similar criminal conduct. The court's
> imposition of a six-year period of supervised release will include terms and
> conditions designed to promote the safety of the public and to afford adequate
> treatment for the defendant.

Id. at 36-37.

The facts before the Court in Mallatt are extremely similar to the facts in the matter presently before this Court. Unlike in Mallatt, Mr. Rosenburg did not have an extensive collection. Mallatt was not under the influence of narcotics but was not thinking lucidly at the time he sought out the illicit images due to a mental health condition that contributed to his actions – ███████████ ████████████████████████████████████████████████. Judge Bataillon found that a "possessor of child pornography is the least culpable in the chain and is a marginal player in the overall child exploitation scheme." Id. at 26.

There are a litany of cases that support the findings and reasoning relied upon in Mallatt. Cases (defendants) must be judged individually. No two defendants are alike. The facts of each case are unique, and as such should be treated individually. The findings in Mallat, are not unique to possession cases. Courts in other matters-imposed sentences at the low or least permissible range of the Guidelines, finding various 3553 factors along with other mitigators, and policy disagreements with the Guidelines.

In United States v. Gellatly, 2009 U.S. Dist. LEXIS 2693 (D. Neb. 2009), Gellatly was "charged with possession of child pornography in violation of 18 U.S.C. §2252(a)(4)(B), [and] receipt or distribution of child pornography, in violation of 18 U.S.C. §2252A(a)(2)…" Id. Gellatly entered a plea of guilty to receipt of child pornography. Id. The District Court stated:

> The Probation Office determined that U.S.S.G. § 2G2.2 provided a base offense
> level of 22... Gellatly accountable for…2,087 images...a two-level reduction under
> U.S.S.G. §2G2.2(b)(1) was warranted because the defendant's conduct was limited

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 17 of 25

to the receipt or solicitation...and the defendant did not intend to traffic in or distribute such material. It also found the following upward adjustments were applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2)…, a four-level increase under U.S.S.G. §2G2.2(b)(4)…, a two-level increase under U.S.S.G. §2G2.2(b)(6)…, and a five-level increase under U.S.S.G. §2G2.2(b)(7)...resulted in an adjusted offense level of 33...[then] resulting in a total offense level of 30.

Id. at 3, 4. Gellatly had no criminal history, and thus a range of imprisonment of 97 to 121 months.

Id. Probation then stated that an outside the Guidelines sentence would be warranted because the Defendant was a teacher and trusted person in the community who worked with children on a daily basis. Id. In determining an appropriate sentence and was guided by the principle that:

When Guidelines are not the result of 'the Commission's exercise of its characteristic institutional role,' such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives' . . . it is 'not an abuse of discretion for a district court to conclude when sentencing a particular defendant' that application of the guideline 'yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case.'"

Id. at 11, 12. (See Kimbrough v. United States, 128 S. Ct. 558 (2007)).

Additionally, the District Court considered Gellatly's history and characteristics in determining that Gellatly was an educated family man with a history of consistent employment for many years. Id. at 30, 31. The District Court began by using the Guidelines calculation of the Probation Office as "its initial starting point." Id. The Court sentenced Gellatly to the minimum mandatory sentence of five (5) years. Id. at 31, 32. Holding that the "[e]nhancements of increasing severity for quantity and for recidivism are aimed at the most dangerous of child pornography offenders," and that Gellatly did not fall into that class. Id. at 34, 35.

Overall, the Court determined that "Gellatly is an example of a defendant who deserves a sentence closer to the low end of the statutory range than to the middle or high end." Id. at 35. The Court found that:

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 18 of 25

A sentence of 60 months (five years) will satisfy the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner. The court finds that a sentence of incarceration shorter than the sentence recommended under the Guidelines is still a lengthy sentence in view of the defendant's age. The mere fact of Gellatly's prosecution and conviction will deter others from engaging in this sort of conduct. The deterrence value of any longer sentence would be **marginal**.

Id. at 36, 37, **emphasis added**; (see also United States v. Wachowiak, 496 F. 3d 744 (7th Cir. 2007), holding a 70-month sentence was sufficient and upheld the District Court finding Wachowiak's 'excellent' character, genuine remorse, susceptibility to treatment, low risk of recidivism, strong family support...")

In United States v. Riley, 655 F.Supp.2d 1298 (S.D. Fla. 2009), the defendant was charged with and pled guilty to one count of transportation of child pornography in violation of 18 U.S.C §§ 2252A(a)(1). Riley's recommended guideline range was between 210-240 months, with a Criminal History I offender. Id. at 1300. The Court stated (citing Stabenow):

The flaw with U.S.S.G. § 2G2.2 today is that the average defendant charts at the statutory maximum, regardless of Acceptance … and Criminal History. As noted by the…Commission, there are "several specific offense characteristics which are expected to apply in almost every case (e.g. use of a computer, material involving children under 12 years of age, number of images)." ... The internet provides the typical means of obtaining child pornography, resulting in a two-level enhancement. See U.S.S.G. § 2G2.2(b)(6). Furthermore, as a result of internet swapping, defendants readily obtain 600 images with minimal effort, resulting in a five-level increase. See U.S.S.G. § 2G2.2(b)(7)(D)... Undoubtedly, as the Commission recognized, some of these images will contain material involving a prepubescent minor and/or material involving depictions of violence (which may not include "violence" per se, but simply consist of the prepubescent minor engaged in a sex act), thereby requiring an additional six-level increase. See U.S.S.G. § 2G2.2(b)(2), (4). Finally, because defendants generally distribute pornography in order to receive pornography in return, most defendants receive a five-level enhancement for distribution of a thing of value. Sec U.S.S.G. § 2G2.2(b)(3)(B). Thus, an individual who swapped a single picture, and who was only engaged in viewing and receiving

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 19 of 25

child pornography for a few hours, can quickly obtain an offense level of 40. Even after Acceptance of Responsibility, an individual with no prior criminal history can quickly reach a Guideline Range of 210-262 months, where the statutory maximum caps the sentence at 240 months. See U.S.S.G. § 5G1.1(a).

The results are illogical; Congress set the statutory range for first time distributors as five to twenty years. Congress could not have intended for the average first time offender with no prior criminal history to receive a sentence of 210 to 240 months. An individual with a Criminal History Category of II faces a Guideline range of 235 to 240 months, and any higher Criminal History score mandates the statutory maximum. These results run contrary not only to Congressional will, but also to a principal Guideline policy-providing harsher penalties to individuals with more significant Criminal History scores while still retaining an incentive for pleas at all Criminal History levels.

Id. at 1302.

The Court considered these factors in determining the appropriate sentence, looking at the defendant's lack of priors, support, acceptance, low risk of reoffending, and willingness for treatment, and sentenced Riley to 60 months of incarceration followed by 5 years of supervised release. Even after being informed that the defendant expressed a desire to engage in sexual activity with a minor over the internet, which was not acted upon or followed up. Id.

By way of a final example, United States v. Magione, Case No.: 11-60238-CR-MARRA (S.D. Fla. 2012) the defendant was sentenced to 70 months' imprisonment. Mr. Magione was the Miami Chief of U.S. Immigration and Customs Enforcement and, in the ultimate irony, was in charge of hunting down child-porn suspects, which he did with much vigor.

What is telling about this case, and particularly relevant to Mr. Rosenburg's case, is that Magione was originally scored by Federal Probation for "for the receipt, or expectation of receipt, of a thing of value." Thus increased Magione's guidelines 5 levels. The basis of this enhancement was the fact that Magione had created a number of separate accounts designed to receive and share pornographic images. Mr. Magione used the special knowledge and skill gained in his law

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 20 of 25

enforcement position to create an elaborate network that allowed him to share images and avoid detection. Incorporating this enhancement into Magione's Guidelines resulted in range of 151-188 months. Notwithstanding, the court, in sustaining the defendants' objections to the PSR, sentenced the defendant to only 70 months.

While clearly the offenses in Riley, Gellatly, Magione cases are distinguishable from the case at bar, the distinctions serve to support Mr. Rosenburg's motion for downward variance. The Magione case involved individual who was tasked with protecting the community and took steps to conceal his actions. When placed side by side, it is simply incongruous that the head of the very agency who investigates these sorts of offenses is sentenced to 70 months in prison, while someone like Mr. Rosenburg could receive a higher sentence. In Riley and Gellatly—both cases involving facts indicating a greater level of culpability than the case presently before the Court—both Defendants received the minimum sentence allowed under the law, and, but for the minimum mandatory requirements, the Courts seemed poised to go lower. All in all, seeking to lump Mr. Rosenburg into a similar imprisonment range fails to conform to the "disparate" logic the sentencing commission seeks to impart when assigning sentences based on actual culpability.

There are numerous other examples of courts in this and other Districts imposing sentences in child pornography cases that are well below the applicable Guideline range that are not found to be disparate. In this case, while the charges are certainly serious, they do not rise to the severity of, soliciting or a vast collection of CSAM. Mr. Rosenburg's lesser degree of culpability merits a sentence in line with his actions, not a Guideline that has been widely criticized as arbitrary.

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 21 of 25

## §5J1.3 – MENTAL AND EMOTIONAL CONDITONS

In 2019, Stanford University published <u>Trauma and Sentencing: The Case for Mitigating</u>

<u>Penalty</u> ████████████████████████, Mirko Bagaric, Gabrielle Wolf & Peter Isham,

Trauma and Sentencing: The Case for Mitigating Penalty for ███████████████████,

30 *Stan. L. & Pol'y Rev.* 1 (2019).  In the abstract, the article finds:

> People who lack guidance when they are young have an increased risk of
> committing crimes. The nurturing that many people receive during their formative
> years can play a key role in the development of appropriate values and behavior.
> Yet there is a reluctance to acknowledge the diminished culpability of offenders
> who have lacked appropriate guidance during their childhood because it is feared
> that doing so might be perceived as justifying criminal behavior and hence leading
> to more crime. The Federal Sentencing Guidelines expressly state that lack of
> guidance as a youth should not be a mitigating sentencing consideration. Despite
> this, approximately half of all federal judges believe that it should reduce the
> harshness of the penalty that is imposed on offenders…**[E]xperiences that are
> commonly associated with being neglected during childhood and often
> profoundly set back the mental and/or emotional state of children,** namely
> being subjected to physical or sexual abuse**, are more concrete in nature and
> should be a mitigating factor in sentencing.** Empirical evidence demonstrates
> that people who are subjected to such trauma in their childhood years have an
> increased risk of subsequently engaging in harmful behavior, such as criminal
> activity. Further, relatively clear criteria can be established to demarcate the scope
> and application of these experiences during childhood for sentencing purposes.
> Reforming the law to make childhood sexual and physical abuse a mitigating
> consideration would improve the doctrinal coherency of the law…

<u>Id</u>. **Emphasis** added.

Mr. Rosenburg is a ██████████████ by a figure who should have offered him guidance

and support, both in the all-important contexts of everyday life and, separately, religion. The ████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 22 of 25

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████

     Many federal courts have examined extreme ████████████████ as a mitigating factor.[10]

Case law is clear that "a downward departure based upon lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing, does "not encompass the extreme psychological and physical abuse" which Defendant suffered as a child[.]" <u>Nowicki</u> at 1250, *citing* <u>Ayers</u>, 971 F. Supp. at 1200. Indeed, "[t]he guidelines do not specifically address the issue of childhood abuse." <u>Roe</u> at 1217. In fact, in the <u>Rivera</u> case, the Second Circuit concluded that, "it seems beyond question ████████████████ childhood -- at some level of severity -- can impair a person's mental and emotional conditions," and such abuse may be properly considered in evaluating a downward departure. <u>Rivera</u> at 85.

     Much like the <u>Nowicki</u> court faced, this Honorable Court is presented with a repentant defendant that faced ████████████████ "severe enough to be extraordinary." <u>Nowicki</u> at 1249. The question then is how this Court must evaluate that abuse. The <u>Nowicki</u> court provides a substantial and cogent roadmap for such an evaluation:

> One way to undertake such an evaluation is to compare the abuse suffered by Defendant to the conduct that is considered so serious as to merit criminal prosecution. The Court believes that allegations of these instances of abuse undoubtedly would result in criminal prosecutions. Another way to evaluate the severity of the abuse is to consider the context in which the abuse occurred.

<u>Nowicki</u> at 1249-50.

---

[10] *See, e.g.*, <u>United States v. Nowicki</u>, 252 F. Supp. 2d 1242 (D.N.M. 2003); United States v. Roe, 976 F.2d 1216, 1217 (9th Cir. 1992); United States v. Rivera, 192 F.3d 81, 84 (2d Cir. 1999); <u>United States v. Ayers</u>, 971 F. Supp. 1197 (N.D. Ill. 1997).

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 23 of 25

Undoubtedly, the abuse Mr. Rosenburg faced meets both points of analysis contemplated by the <u>Nowicki</u> court. The abuse was extensive, not something that "happened only once or twice during the lifetime of the child," as the <u>Nowicki</u> court distinguished. *Id* at 1250. ███████████

█████████████████████████████████████████████████████████

████████████ No matter which way this Honorable Court may weigh the <u>Nowicki</u> analysis methodologies, it is left with one logical conclusion: as a child, █████████████████████████████████████████ As contemplated by the <u>Trauma and Sentencing</u> publication, Mr. Rosenburg is exactly the type of defendant whose life was irrevocably altered by ██████████████████████, and a downward departure is warranted as a materially fair adjustment to a unique defendant.

## §5K2.20 – ABERRANT BEHAVIOR

While §5K2.20, is not generally applicable in this matter, the case of <u>United States v. Nunemacher</u>, 362 F.3d 682 (10th Cir. 2004), is instructive and relevant. In <u>Nunemacher</u>, the defendant entered a plea to possession of child pornography, after initially being charged with possession and distribution. [T]he district court departed downward and imposed a sentence of five years' probation based on the limited duration of the offense, voluntary termination of illegal activities, diminished capacity, and post-offense rehabilitation. <u>Id</u>. at 683. All these factors are present in Mr. Rosenburg 's case. In coming to the sentence, the Court in <u>Nunemacher</u> undertook a "heartland" determination:

> In [a] "heartland" determination, [the Court] must determine whether the factors
> relied upon by the district court were authorized under § 3553(b) and also justified
> by the facts of the case. Title 18 U.S.C. § 3553(b)(1) provides that a district court
> may depart if "there exists an aggravating or mitigating circumstance of a kind, or
> to a degree, not adequately taken into consideration by the Sentencing Commission

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 24 of 25

in formulating the guidelines." *Id.* "In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2)." *Id.* Section (a)(2) provides that the court, in imposing a sentence, shall consider

the need for the sentence imposed —
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

Id. at 687.

The atypical conduct by Mr. Rosenburg, limited in time, scope, and duration, cooperation

with law enforcement, history of abuse and need for treatment, are all in line with the reasoning in

Nunemacher, and the basis for the holding:

> Section 5K2.20 provides that "[a] sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior." *Id.*
>
> "Aberrant behavior" means a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life.
>
> *Id.,* Appl. N. 1. The parties agree that Defendant's conduct does not fall into the literal definition of aberrant behavior. However, pursuant to United States v. Neal, 249 F.3d 1251, 1255-56 (10th Cir. 2001), limited duration may be considered an "analogous" factor which provides a "legally permissible bas[is] for sentencing departures."[9] *Id.* at 1258. Coupled with voluntary termination and cooperation with law enforcement as "atypical conduct," limited duration strengthens the district court's conclusion that Defendant's conduct was atypical. We therefore hold that, on the facts of this case, Defendant's **"atypical conduct," including one or all of the three components discussed above, could be considered sufficiently exceptional to warrant a departure.**

Id. at 688. **Emphasis Added.**

United States of America v. Meir Rosenberg
Case No. 24-CR-00189
Sentencing Memorandum/Request for Variance
Page 25 of 25

The main distinction is that Nunemacher possessed and distributed child pornography while using a website that he was *publishing* to. Nunemacher made himself a link in the distribution chain, which is a major step up from Mr. Rosenburg's involvement with CSAM.

## CONCLUSION

When taking into consideration the similarly situated defendants and the progeny of cases cited above, it is impossible not to notice the similarities. Mr. Rosenburg is an individual with a category 1 criminal history. Mr. Rosenburg's actions were limited in time and scope, and not a vast collection as this court is used to seeing. In terms of family and friends, Mr. Rosenburg is loved by anyone who comes across him. All of them speak very highly of his caring, generous, and selfless personality. Mr. Rosenburg has a serious need for therapy ███████████████ █████████████████████.

Considering the foregoing facts and circumstances, it is respectfully requested that the Court impose a sentence of sixty (60) months, as it serves as a just sentence, promotes respect for the law, provides deterrence, and is not disparate.

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2025, I filed the foregoing with the Clerk of the Court, redacted pursuant to DE 77, and with limited exhibits.

Respectfully submitted,

By:  /s/ *David Seltzer*
     DAVID SELTZER
     Attorney for the Defendant
     Florida Bar #782041
     10750 NW 6th Court., 2nd Floor
     Miami, Florida 33168
     Tel: 305.444.1565
     Fax: 305.444.1665